**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| THOMAS H. LOCH, GLENNA H. LOCH and KAYLA N. LOCH, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 06-CV-0017-MJR |
| BOARD OF EDUCATION OF EDWARDSVILLE COMMUNITY SCHOOL DISTRICT #7, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

REAGAN, District Judge:

### I.  Background and Procedural History

Plaintiffs, Thomas, Glenna and Kayla Loch[1], filed suit against Defendant, Board of Education of Edwardsville Community Unit School District No. 7 ("the District"), asserting claims against the District arising under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 794 *et seq.*, the Civil Rights Restoration Act of 1987 ("CRRA"), Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d, *et seq.,* and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*  The action proceeds on the Lochs's amended complaint, filed November 8, 2006 (Doc. 44).

---

[1]To avoid confusion, where appropriate the Court will refer to Plaintiffs, individually, as Thomas, Glenna or Kayla, or, collectively, as "the Lochs."

The Lochs appeal the decision of Impartial Hearing Officer ("HO") Gail Friedman who, after a six-day due process hearing, found entirely in favor of the District. Specifically, the HO found as follows: (1) the District appropriately found that Kayla was ineligible for special education and related services; (2) the District did not violate the parents' procedural rights under the IDEA and Illinois law as it provided adequate prior written notice under 34 C.F.R. 300.503 and 23 Ill.Adm. Code § 226.160(d); and (3) Kayla's parents, Thomas and Glenna, were not entitled to reimbursement for Kayla's unilateral placement at the community college.

Kayla alleges that the District, *inter alia*, failed to evaluate her in a timely manner, refused to honor dual credit courses and discriminated against her on the basis of sex. Thomas and Glenna allege that the District violated the procedural requirements of the IDEA, retaliated and discriminated against them for having filed a complaint with the Human Rights Authority; and deprived Kayla of a free appropriate public education ("FAPE").[2]

Kayla was diagnosed with Diabetes Mellitus (Type 1, insulin dependent) in 1997 when she was ten years old. In June, 2003, Kayla was diagnosed with "adjustment disorder - mixed anxiety and depression," and, in June, 2004, she was diagnosed with "social anxiety disorder." After Kayla was diagnosed with diabetes, the school district developed a plan for accommodating her disability under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (commonly known as a "504 plan"). Although Kayla began to miss school regularly, she maintained good grades, and teachers continued to rate her social development well. Her attendance record eroded further in eighth and ninth grades and in the first semester of tenth grade, but she still kept up with her work and performed

---

[2]On May 18, 2007, the Court dismissed Count VII, Glenna's § 1983 claim, and Count X, Thomas's § 1983 claim. The Court also dismissed Kayla's claim of sex discrimination (Count III) under Title VI and the ADA but allowed her to proceed under Title IX. *See* Doc. 72.

well.

Beginning in March, 2004, during the second semester of her sophomore year, Kayla stopped attending classes at Edwardsville High School ("EHS") and began to attend Lewis and Clark Community College ("LCCC"). This step was taken without consultation or prearrangement with EHS or District administrators. Because Kayla stopped attending classes and completing her work, she failed most of her classes that semester, and her enrollment was dropped.

In July, 2004, the Lochs met with the EHS principal and proposed allowing Kayla to take all of her classes for the following academic year at LCCC. They proposed that Kayla remain registered at EHS and receive credit toward graduation from EHS. The principal responded that school board guidelines did not allow such an arrangement but that he and the assistant superintendent for curriculum would work with the Lochs to devise an appropriate plan for Kayla's continued education at EHS.

Thomas then requested an evaluation under the IDEA to determine whether Kayla was eligible for special education. After conducting a series of tests and meeting with Kayla's therapist, psychiatrist and pediatric endocrinologist, school officials concluded that Kayla's intellectual and psychological functioning were well within the normal category but that she was "at risk" in the "School Maladjustment" domain. In sum, school officials found that Kayla was not in need of special education services.

The Lochs were dissatisfied with this result and ultimately submitted a request for a due process hearing. As outlined above, the HO found in favor of the District, and there was no change in Kayla's status or her eligibility for special education. Because the Lochs could not obtain the accommodations that they sought, they filed the instant action against the District. Before the

Court are the parties' cross-motions for summary judgment (Docs. 161, 163).

## II.   Applicable Legal Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions and affidavits reveal that there is no genuine issue as to any material fact *and* that the moving party is entitled to judgment as a matter of law.  ***Vukadinovich v. Board of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 698-99 (7th Cir. 2002).**

The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. ***Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986); *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 996 (7th Cir. 2002).**  Rather, to successfully oppose summary judgment, the nonmovant must present definite, competent evidence in rebuttal.  ***Vukadinovich*, 278 F.3d at 699.**

The Seventh Circuit has clarified that the "usual Rule 56 standard of review applies to cross-motions for summary judgment." ***Int'l Brotherhood of Elec. Workers v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002) (citing *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983)**.  Thus, in evaluating the District's arguments for summary judgment and determining whether a genuine issue of material fact remains, the Court construes the record in the light most favorable to non-movants, the Lochs.  In evaluating the Lochs's motion and determining whether a genuine issue of material fact remains, the Court construes the record in the light most favorable to non-movant, the District.

## III.   Analysis

### A.   Whether the District is entitled to summary judgment on certain claims in Counts II and IV because the Lochs's claims are untimely

The District contends that most allegations in Counts II (§ 504) and IV (§ 1983) are barred by the applicable two-year statute of limitations.  Specifically, the District argues that Kayla's

claims regarding incidents in her freshman (2002-2003) and sophomore years (2003-2004), prior to January 10, 2004, are entirely barred.  Kayla filed her initial complaint on January 10, 2006.

The Lochs do  not argue that the two-year statute of limitations is inapplicable. Rather, they argue that their claims are timely because they did not begin to accrue until the Lochs had knowledge of the injury.  Among the dates proposed by the Lochs, only one falls within the two year-period prior to their filing the instant complaint:  Thomas's and Glenna's filing for an IDEA due process hearing on February 11, 2005. *See* Doc. 168, p. 3, fn 1.  The Lochs also contend that their claims remain timely under the continuing violations doctrine because the discrimination and injury are ongoing. The District controverts this latter assertion, arguing that the continuing violations doctrine is  inapplicable outside employment settings and, in the alternative, is inapplicable to the facts of this proceeding.

Section 504 of the Rehabilitation Act contains no statute of limitations, so the Court borrows the two-year statute of limitations applicable to personal injury suits in Illinois.  ***Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 933 (7th Cir. 1993) (citing Ill.Rev.Stat. ch. 110, ¶ 13-202; *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)**.  Similarly, § 1983 does not contain an express statute of limitations, and the Court adopts the two-year limitations period for personal injury claims. *Henderson v. Bolanda*, **253 F.3d 928, 931 (7th Cir. 2001) (citing 735 ILCS § 5/13-202; *Wilson*, 471 U.S. at *id*.)**.

Pinpointing accrual in the present case poses a complex question, inasmuch as the Lochs's action challenges an entire course of conduct by the District.  However, the *injury* alleged in this case is denial of special education benefits, the failure to provide certain procedural safeguards and denial of reimbursement for attending classes at LCCC.  The limitations period does not run from

the various dates of the individual discrete injuries as suggested by the District, but rather from the date that the District denied the special education program the Lochs sought. *See, e. g., Bd. of Educ. v. Wolinsky,* **842 F.Supp. 1080, 1085 (N.D.Ill. 1993)**. Thus, the two-year limitations period began on January 18, 2005, when the District notified Thomas and Glenna that Kayla was not eligible for special education and related services.

Alternatively, because the IDEA requires administrative exhaustion before Rehabilitation Act or § 1983 claims premised on IDEA violations can be brought in state or federal court, the Lochs's § 504 and § 1983 claims may not have accrued until January 24, 2005, the date they requested a due process hearing, as required under § 1415(*l*). *See Weyrick v. New Albany-Floyd County Consolidated School Corp.,* **2004 WL 3059793, 15 (S.D.Ind. 2004) (citing 20 U.S.C. § 1415(*l*);** *Marie O. v. Edgar***, 131 F.3d 610, 622 (7th Cir. 1997))**. Considering the accrual date under either of these standards, this action, filed January 10, 2006, is timely.

**B.    Whether the District is entitled to summary judgment on the majority of Counts I, II, IV, VI and IX because the Lochs failed to exhaust administrative remedies**

The District asserts that several claims asserted in Counts I, II, IV, VI and IX could have been remedied had the Lochs properly raised them at the due process hearing. The District contends that the issue of the adequacy and completeness of the District's evaluations was not raised with the HO and that the HO made no factual findings and issued no order with respect to this claim. According to the District, Thomas conceded that the District complied with the regulations when identifying what additional information was needed for the evaluation and complied with the requirements for determining what information should be considered as part of an evaluation. Stated simply, the District contends that Thomas disagreed with the IEP team's conclusions rather than with the sufficiency of the evaluation. Consequently, the District argues that the exhaustion requirement

bars the Lochs from now disputing the evaluation process. The District also urges that the Lochs cannot avoid the exhaustion requirement by an end run around IDEA requirements and the relief available under the IDEA.

The Lochs agree that the IDEA requires exhaustion of administrative remedies before pursuing claims under § 504, ADA and § 1983 claims but contend that they are not required to argue these claims to the hearing officer. Rather, according to the Lochs, since they requested and attended an IDEA due process hearing, the Court may consider related § 504, ADA and § 1983 claims on their merits without further exhaustion. Additionally, the Lochs contend that they raised issues regarding, *inter alia*, the correctness and timeliness of the District's review and determination as to Kayla's eligibility for special education and whether the District's actions were discriminatory or retaliatory in nature.

The Court is guided by the Seventh Circuit's analysis in ***Charlie F. v. Bd. of Educ.*, 98 F.3d 989 (7th Cir. 1996)**. In ***Charlie F.***, a disabled student brought suit against the Board of Education, not under the IDEA, but under § 1983, the Rehabilitation Act, the ADA and the state law of torts. Nonetheless, the Seventh Circuit determined that the exhaustion requirement of the IDEA governed, citing the following provision:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter. ***Charlie F.,* 98 F.3d at 991 (citing 20 U.S.C. § 1415(*l*)**.

The Court stated that "any pupil who wants 'relief that is available under' the IDEA

must use the IDEA's administrative system, even if he invokes a different statute."[3] *Id.* The Court explained that, under the IDEA, educational professionals get "the first crack at formulating a plan to overcome the consequences of educational shortfalls." *Id*. **at 992**. If the parents are dissatisfied with the remedies offered and demand compensation, "the response should be that they cannot ignore remedies available under the IDEA and insist on those of their own devising[.]" *Id*.

Therefore, the Lochs were required to properly raise their claims at the due process hearing and to give the District the opportunity to provide a remedy before repairing to the courts. The Lochs's contention that merely requesting and attending an IDEA due process hearing is sufficient to exhaust claims under § 504, the ADA and § 1983 must fail. The question then is whether the adequacy and completeness of the District's evaluations were raised at the due process hearing.

As of the April 1, 2005, pre-hearing conference, the following issues were before the HO at the due process hearing:

1.      Whether the district's review and determination of eligibility [were] correct?
2.      Whether the eligibility determination was timely made?
3.      Whether parents are entitled to reimbursement for student's unilateral placement at the community college?
4.      Whether student should be found eligible under emotional disturbance for failure of the school district to follow student's 504 plan? Doc. 1, Exhibit A, p. 2.

Over the District's objection, on July 14, 2005, the following issues were added

---

[3]The Court notes that, under certain circumstances, a plaintiff may not need to first exhaust administrative remedies under the IDEA upon a showing that exhaustion would be futile. *McCormick v. Waukegan Sch. Dist. # 60,* **374 F.3d 564, 569 (7th Cir. 2004)**. No such showing has been made in this case.

pertaining to procedural violations:

> 1. Whether the district provided written notice pursuant to 20 U.S.C. 1415(b)(3) and (c) within a reasonable time to parents prior to proposing, or refusing to initiate, or change the identification, evaluation, placement or provision of a free appropriate public education?
> 2. Whether the district provided prior written notice of the evaluations which the district conducted with respect to the case study evaluation?
> 3. Whether the district provided parents with information on specific procedures required for pursuing a referral?
> 4. Whether the district provided procedures for presenting complaints?
> 5. Whether the district was required to provided prior written notice prior to expelling student from school rolls during pendency of the due process proceeding?
> [6].[4] Whether the district was required to provide procedures or written notice concerning the placement determination made by parents when notified by parents?
> [7]. Whether the district provided procedures, written notice/follow-up concerning the placement determination when notified?
> [8]. Whether the district complied with requirements for disclosure of evaluation results and recommendations provided by district personnel? Doc. 1, Exhibit A, p. 3.

In Count I, Kayla alleges that the District's evaluation process was inadequate, incomplete and subjective. She further alleges that the District's "school team" evaluated her in a haphazard manner and erred in determining that she was ineligible for special education and related services.

None of the issues before the HO involve the adequacy, completeness and objectivity of the District's evaluation process, and the HO made no findings as to these issues. Evaluating whether the District made a correct determination differs from evaluating whether the District followed the correct process in arriving at that determination, or, more simply, the end is not the same as the means. As the District correctly points out, Thomas disagreed with the IEP team's conclusions rather than with the sufficiency of the evaluation. If the sufficiency of the District's

---

[4]The Court has renumbered these questions, which were misnumbered in the HO's Decision and Order. *See* Doc. 1, Exhibit A, p. 3.

evaluation had been at issue, the HO would have considered and discussed the domain meeting and the requirements for conducting an evaluation set forth in 34 C.F.R. § 300.532. Certainly, the HO's order would have addressed the sufficiency of the evaluation if that issue had been before her. For these reasons, the Court finds that the Lochs have not exhausted the issue of the sufficiency of the evaluation process, and they are barred from arguing it before this Court. The Court will dismiss Kayla's claim in Count I regarding the sufficiency of the evaluation process (Count I(D)).

Similarly, the exhaustion requirement bars the Lochs's claims under Counts II (Kayla's claims under § 504 and the ADA), VI (Glenna's discrimination and retaliation claims under Title VI, § 504, ADA and Title IX) and IX (Thomas's discrimination and retaliation claims under Title VI, § 504, ADA and Title IX). The relief that the Lochs seek is available under the IDEA for alleged discrimination and retaliation related to Kayla's disability under § 504 and the ADA, including overturning the HO's decision and reimbursement for Kayla's attending LCCC.

It is easily seen from the lists of issues before the HO that Glenna's and Thomas's claims of discrimination and retaliation were not among the issues raised. Consequently, even though these claims are brought under statutes other than the IDEA, they are barred by the Lochs's failure to exhaust. As set forth above, the IDEA does not limit relief available under other laws; nonetheless, parties must exhaust their claims "to the same extent as would be required had the action been brought under this subchapter." *Charlie F.*, **98 F.3d at 991 (citing 20 U.S.C. § 1415(f)**.

Moreover, as to the claims for reimbursement for classes at LCCC, educational opportunities expense is available under the IDEA. The Lochs cannot avoid IDEA requirements and remedies by requesting damages under different statutes but based upon the same facts. The Court again turns to the analysis undertaken by the Seventh Circuit in *Charlie F.* Therein, the parents

demanded monetary compensation for educational services that were not available through the local school district and that the district was not required to provide.[5] Similarly, here, Kayla seeks monetary compensation in the form of tuition and expenses for seeking educational opportunities at LCCC, a service that was not available and that the District was not required to provide.

First, the Seventh Circuit observed that the IDEA does not authorize compensatory money damages. *Charlie F.*, **98 F.3d at 991**. The analysis does not stop, however, with the unavailability of this form of relief under the IDEA. *Id*. The Seventh Circuit construed "'relief available' to mean relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers." *Id*. The Court explained as follows:

> The statute speaks of available relief, and what relief is 'available' does not necessarily depend on what the aggrieved party wants.... The nature of the claim and the governing law determine the relief no matter what the plaintiff demands.... By making an unreasonable or unattainable demand parents cannot opt out of the IDEA.... Perhaps Charlie's adverse reaction to the events of fourth grade cannot be overcome by services available under the IDEA and the regulations, so that in the end money is the only balm. But parents cannot know that without asking, any more than we can. Both the genesis and the manifestations of the problem are educational; the IDEA offers comprehensive educational solutions; we conclude, therefore, that at least in principle relief is available under the IDEA. *Id.* **at 991-93 (internal citations omitted)**.

Kayla wants money to pay for her classes at LCCC. The Court could measure damages by the cost of these services. Yet, the District is able, indeed is required, to provide these services in kind under the IDEA. There is no dispute that classes were available at EHS to enable Kayla to obtain a high school diploma. The Lochs were dissatisfied with what the District offered and demanded that the District pay for Kayla to take classes at LCCC, which was an unreasonable

---

[5]EHS Principal Norm Bohnenstiehl testified as follows: "We have not allowed students to take courses outside of our high school, like at Lewis & Clark Community College or S. I. U. that would count towards graduation." Bohnenstiehl Deposition, 18:2-5

and unattainable demand. The Court is unwilling to allow the Lochs to opt out of the IDEA because it does not offer them the choices that they want, when the District was and remains willing to take corrective steps to resolve their claims. For all of these reasons, the Court will dismiss Count II, VI and IX.

**C.** **Whether the District is entitled to summary judgment on Counts I, V and VIII because the Lochs cannot establish that the HO's decision was in error**

The District argues that the Lochs are unable to meet their burden of proving that the HO's decision was clearly in error. Specifically, the District argues that (1) the Lochs have the burden of proving that the HO's decision was in error; (2) the HO appropriately decided that Kayla was not eligible for special education; and (3) the HO correctly found that the District satisfied IDEA procedural requirements.

The Lochs do not dispute that it is their burden to show that the HO's decision was in error. The issues the Lochs raise are that the HO erred in determining that Kayla was not a child with a disability; and (2) erred in interpreting 34 C.F.R. § 300.7(c)(4)(i) as requiring an adverse educational effect over a long period of time.

The Court gives "due weight" to the HO's findings and reviews them under "a standard that is more stringent than the substantial evidence standard but less than *de novo* review." *Krista P. v. Manhattan Sch. Dist.*, **255 F.Supp.2d 873, 884 (N.D.Ill. 2003) (citing *Heather S. v. Wis.,* 125 F.3d 1045, 1052 (7th Cir. 1997)**. The standard of review in IDEA cases is "a sliding scale, with a more searching review necessary the greater the amount of new evidence submitted to the court." *Id*. **(citing *Sch. Dist. of Wis. Dells v. Littlegeorge,* 295 F.3d 671, 675 (7th Cir. 2002)**. When, as in the current case, no new evidence is submitted, the court applies a standard that is "basically the clear-error or substantial-evidence standard." *Id*. Under this deferential review, the

Court independently evaluates the testimony and evidence but cannot substitute its own ideas of sound educational policy for those of the school authorities. *Id*. **(citing *Bd. of Educ. of Cmty. Consol. Sch. Dist. 21 v. ISBE,* 938 F.2d 712, 715-16 (7th Cir. 1991) (citing *Bd. of Educ. v. Rowley,* 458 U.S. 176, 206 (1982))**.

### 1. Whether Kayla is a "child with a disability"

The District is correct that the Lochs, as the parties challenging the decision, bear the burden of persuasion on their claim. ***Bd. of Educ. v. Illinois State Bd. of Educ*., 2006 WL 2989289, (N.D.Ill. 2006)**. A child with a suspected learning disability must meet the statutory criteria for "child with a disability" to receive IDEA protection. **20 U.S.C. § 1401(3)**. The parties dispute whether Kayla is a "child with a disability" under the federal and state definitions such that she is qualified for special education and related services under the IDEA. *See* **20 U.S.C. § 1412(a)(1)(A)**.

Under federal law, a "child with a disability" is defined as having " ...a serious emotional disturbance ... an other health impairment ... and who, by reason thereof, needs special education and related services." **34 C.F.R. § 300.7(a)(1)**.[6]

"An other health impairment," commonly referred to as an OHI, is defined in 34 C.F.R. § 300.7(c)(9) and 23 Ill. Adm. Code § 226.75 as follows:

> having limited strength, vitality or alertness, including a heightened alertness with respect to the educational environment, that -
> (i) Is due to chronic or acute health problems such as asthma, attention deficit disorder or attention deficit hyperactivity disorder, diabetes, epilepsy, a heart condition, hemophilia, lead poisoning, leukemia, nephritis, rheumatic fever, sickle

---

[6]The Court notes that the citations to the Code of Federal Regulations and the Illinois Administrative Code are no longer accurate, *e. g.,* 34 C.F.R. § 300.7 was effective to October 12, 2006, and the definition of "child with a disability" is now found in 34 C.F.R. § 300.8. Because the Court reviews the administrative record as of the date that the due process hearing was held, it will refer to predecessor regulations and statutes.

cell anemia; and

(ii) Adversely affects a child's educational performance. **34 C.F.R. § 300.7(c)(9)**.

As the HO properly found, diabetes is a condition that may qualify a child for special education and related services if, after conducting an evaluation pursuant to 34 C.F.R. § 300.530-33.543, it is determined that the child requires those services.

Because Kayla was also diagnosed with an emotional disturbance, the HO considered her case in light of 34 C.F.R. § 300.8(c)(4) and 23 Ill. Adm. Code § 226.75, where emotional disturbance is defined as follows:

(i) Emotional disturbance means a condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree that adversely affects a child's educational performance:

(A) An inability to learn that cannot be explained by intellectual, sensory, or health factors.

(B) An inability to build or maintain satisfactory interpersonal relationships with peers and teachers.

(C) Inappropriate types of behavior or feelings under normal circumstances.

(D) A general pervasive mood of unhappiness or depression.

(E) A tendency to develop physical symptoms or fears associated with personal or school problems.

(ii) Emotional disturbance includes schizophrenia. The term does not apply to children who are socially maladjusted, unless it is determined that they have an emotional disturbance under paragraph (c)(4)(i) of this section. **34 C.F.R. § 300.7(c)(4)**.

The Court finds no error in the HO's decision that Kayla is not a "child with a disability." Kayla is being treated for diabetes and has been treated at times for emotional problems. However, there is no proof that these conditions affected her educational performance to the extent that she required special services and programs.

On August 29, 2003, the school nurse, Pam Harmon, R. N., wrote a letter to Kayla's

pediatric endocrinologist, Costa Voulgaropoulos, M. D., in which she sought information to complete Kayla's health plan. Voulgaropoulos's Deposition, Exhibit 6. Therein, Harmon noted Kayla's history of "excessive absenteeism and tardiness attributed to her diabetic condition." *Id.* On September 4, 2003, Dr. Voulgaropoulos responded as follows:

> [D]iabetes mellitus type I under good control is not a reason for excessive absenteeism and tardiness, although complications such as mild depression, stress, or physical complications may lead to functional impairments. Teenagers with diabetes who manage their insulin, diet, blood sugars and physical activity are expected to be able to function at the level of non-diabetic peers. *Id.* Exhibit 7.

Kayla received all passing grades for her freshman year, including one A, six Bs, three Cs and one D for courses including Honors English, Integrated Algebra, Honors Biology, Government and Spanish.[7] It was not until the fourth quarter of tenth grade that Kayla's educational performance suffered. Kayla testified that towards the end of her sophomore year, she "was hardly ever there. Maybe once a week." Doc. 162, Exhibit D, Kayla's Deposition (Kayla's Dep.) 133:3-6.

When asked if teachers refused to accept make-up work from her during her sophomore year, Kayla answered, "No." *Id.* 132:10-13. She then testified that she had "given up" and stopped turning in any make-up work towards the end of the second semester of her sophomore year. *Id.* 132:14-24 She received two Fs for classes in which she missed 40 days and a third F for a class in which she missed 31 classes.[8]

The school psychologist testified that Kayla met none of the criteria for emotional

---

[7]Integrated Algebra is a class for students who are less proficient in math. Doc. 162, Exhibit B, Farley Deposition 18:9-23. Kayla received an A- and a B+ for her two semesters of Integrated Algebra.

[8]If Kayla had been in attendance at the start of her junior year, she would have had the opportunity for an "academic retake," *i. e.,* to retake classes and replace the failing grade with a new grade. Farley Dep. 19:4-13.

disturbance and that she observed no adverse education effects. More specifically, she testified that, although Kayla was absent a great deal and, thus, missed instruction, she was still able to do make-up work on her own and successfully complete assignments.

The director of special education testified that no documentation was presented at the January 18, 2005, meeting to substantiate that all of Kayla's absences were due to her diabetes. The Lochs offer no evidence of increased severity of symptoms occurring in Kayla's physical or emotional health during the second semester of tenth grade that would justify her absences - or explain why she stopped making up her class work.

The undersigned district judge agrees with the HO that Kayla "just quit going to EHS." Doc. 1, Exhibit A, Decision and Order, p. 16. Until Kayla stopped attending classes and stopped making up her work, she was achieving well and did not need specialized instruction. Kayla's OHI did not adversely affect her educational performance; consequently, she does not meet the statutory requirements that could qualify her for special education and related services.

## 2. Timeliness of the District's evaluation

The Lochs assert that there was a delay in the District's evaluating Kayla. However, the record is clear that the IEP meeting was held well within the time period allotted by statute for the District's compliance with a parent's request. Pursuant to the Illinois Administrative Code, the determination of a student's eligibility must be made and the IEP meeting completed "no later than 60 *school days* following the date of written consent from the parent to perform the needed assessments." **23 IL ADC 226.110(d) (emphasis added)**. Thomas filed a consent for evaluation on October 29, 2004. The District timely conducted the evaluation and held the IEP meeting on January 18, 2005, which was well within 60 school days after Thomas's consent. Accordingly, the

16

HO's decision as to timeliness must be upheld.

      **3.**      **Whether the District failed to follow Kayla's 504 plan and, thus, caused her to become emotionally disturbed**

The Lochs assert that Kayla should have been found eligible for special education and related services because the District's failure to follow her 504 plan caused her to become emotionally disturbed.

Kayla's freshman 504 plan, drafted by Thomas and Glenna, was accepted by the EHS coordinator as written. It included, among others, the following accommodations: (1) Kayla was to have a "buddy" available when she was suffering from low blood sugar; (2) she was to be allowed to eat and drink in class; (3) she was to be given "reasonable extended due dates" on homework and tests; and (4) substitute teachers were to be informed of her accommodations.

A team, which included, among others, Kayla's teachers, the school nurse, and the Director of Student Services, met with Thomas to prepare Kayla's sophomore 504 plan. Among the accommodations provided were the following: (1) Kayla could visit the nurse any time to have her sugar checked by leaving class with her agenda book and notifying staff of her departure; (2) a "buddy" would be available when Kayla was suffering from "low sugar"; (3) during absences, Kayla would receive one day for every day missed to make up work; and (4) Kayla was allowed to drink fluids and use the restroom.

Kayla testified that, routinely, she had no problems with her teachers following her 504 plan. *See, generally,* Kayla's Dep. 99:13-105:23; 158:4-161:13. However, there were instances in which her 504 plan was not followed. Kayla testified that a teacher during her freshman year at one time refused to accept her make-up work. *Id*. 95:18-20. She also indicated that her grade was

reduced by 50% once when she turned it in late. *Id*. 96:5-7.[9] One of Kayla's teachers during her sophomore year embarrassed Kayla in front of the class by suggesting that Kayla was using her diabetes as an excuse for being absent. *Id*. 97:9-23. Kayla spoke to the teacher about her condition after class, and the teacher did not refer to her diabetes again and apologized for her comments. *Id*. 98:8-10. One teacher issued Kayla a detention for being late after warning Kayla and after Kayla was tardy for the third time. *Id*. 101:5-9:7. Once, Kayla was stopped in the hall on her way to the nurse because she did not have a hall pass. *Id*. 106:6-22.

Two substitute teachers were apparently unaware of Kayla's 504 plan. One substitute asked what she was doing when she pricked her finger during class to check her blood sugar level. *Id*. 93:4-10. Apparently, the same substitute objected to her bringing a bottle of water into the classroom. *Id*. 129:3-130:14. She did not complain to anyone about the incidents with the substitute teacher, and her regular teacher followed her 504 plan. *Id*. 160:6-18. Another substitute refused to allow her to leave class until the regular instructor returned.

The Court agrees with the HO that, over a two-year period, the instances in which the District failed to follow Kayla's 504 plan were infrequent and that the staff made every effort to follow her plan. Indeed, in reviewing Kayla's testimony, the Court observes that Kayla was very able to speak up for herself and to take appropriate action when any problems arose. As found by the HO, Kayla's medical records do not reflect that any of her difficulties in June, 2003, were caused

---

[9]The Court notes that at other times during Kayla's deposition she related that the majority of her teachers during her sophomore year reduced her grade by 50% when she turned in late work. *See, e. g.,* Kayla's dep. 125:11-14. Kayla testified that her sophomore math teacher, Ms. Larsson, took 50% off every paper turned in late; however, Kayla was unable to produce any document evidencing that was the teacher's practice. Kayla's Dep. 37:20-38:1. Kayla did not contact Ms. Larsson during the last two to three months of her sophomore year when she was not attending school. *Id*. 38:3-13.

by a failure to follow her 504 plan. Nor is there evidence that those failures that occasionally occurred caused her to be disabled in a way that required special education or related services. As the HO summed up, Kayla just quit going to EHS.

### C. Prior notice

The Lochs assert that Kayla was denied a FAPE by the District's failure to give prior written notice or failure to follow-up as to the following: (1) the evaluations that the District was going to conduct with respect to Kayla's Case Study Evaluation; (2) the determination that Kayla was not eligible for special education and related services; (3) when notified that Kayla would be attending LCCC; and (4) in removing Kayla from the school rolls.

Pursuant to 34 C.F.R. § 300.503, the requirements for prior notice by a public agency are as follows:

> (a) Notice. Written notice that meets the requirements of paragraph (b) of this section must be given to the parents of *a child with a disability* a reasonable time before the public agency--
>
> (1) Proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child; or
>
> (2) Refuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child. **34 C.F.R. § 300.503(a) (emphasis added)**.

As in ***Krista P, supra,*** which the HO relied upon in arriving at her conclusion regarding prior notice, the Lochs were not entitled to prior written notice under the above statute because Kayla had not been identified as "a child with a disability. **255 F.Supp.2d at 889**. Going a step further, the HO determined that, even if the Lochs were entitled to prior notice, the District had provided it. In particular, the HO found that (1) Thomas was present at the October 29, 2004, collaborative team meeting and did not deny receiving the team meeting summary and

recommendations for the domains in which Kayla would be tested; (2) Thomas and Glenna did not deny receiving a copy of the written report that contained documentation of the ineligibility determinations; and (3) Thomas and Glenna were provided with a copy of the collaborative team's report on October 29, 2004, and the IEP team's report and notice of the team's determination on January 18, 2005. No further notice was necessary after Thomas and Glenna unilaterally placed Kayla at LCCC, although the District sent letters and made telephone calls informing the Lochs that Kayla would be dropped from enrollment at EHS if she did not attend school. The HO's determination that ample prior notice was given to the Lochs, even though not required by statute, is well supported by the record.

### D. Specific procedures for pursuing a referral for a case study evaluation

The Lochs assert that the District failed to provide them with any specific procedures for pursuing a referral for a case study evaluation. The HO's determination as to this issue is, again, well founded. The assistant superintendent explained to Thomas on September 3, 2004, how out-of-district placements might be paid for by the District if the student had an IEP. The assistant superintendent followed up, on September 16, 2004, by sending Thomas a letter and a parents' rights booklet. Furthermore, as the District points out, Thomas and Glenna received a copy of EHS's 2004-2005 handbook, which provides information on how to request an evaluation. There is no contrary evidence to support the Lochs's position that information was withheld from them.

In sum, the Court finds no error in the HO's Decision and Order, and the District is entitled to summary judgment on Counts I, V and VIII.

**D.     Whether the District is entitled to summary judgment on Count III[10] because Kayla cannot establish a *prima facie* case of gender discrimination**

Kayla contends that she was discriminated against because of her sex when she was denied access to educational opportunities offered male students, *i. e.,* denied a "stay put" provision with respect to her LCCC classes, denied consideration for first period study hall, denied a "permission letter" to continue at LCCC, refused the ability to have her "dual credit" courses accepted towards high school graduation and "refused access to such programs as 105 ILCS 5/Article 13B."

The District responds that Kayla has presented no direct evidence of discrimination and, therefore, must attempt to establish her case through the three-step approach adopted in *McDonnell Douglas v. Green*, **411 U.S. 792 (1973)**. The District contends that Kayla cannot show that the District complied with the IDEA for male students but not for her or that the District permitted male students to attend college in lieu of attending high school but did not so permit her.

Title IX of the Education Amendments Act of 1972 ("Title IX"), as amended, states, in relevant part, that "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" **20 U.S.C. § 1681(a)**. As the Seventh Circuit has indicated, "federal courts look to cases decided under Title VII to inform analysis under Title IX." *Doe v. University of Illinois,* **138 F.3d 653, 663 (7th Cir. 1998)**.

In order to prove sexual discrimination under Title VII, a plaintiff may rely on direct

---

[10]The District mistakenly refers to Kayla's sex discrimination claim as Count IX.   *Cf.* Amended Complaint, pp 29, 37, 38.

evidence showing that she was treated less favorably because of her sex, or she may attempt to establish her case through the indirect, burden-shifting method set forth in *McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973). **El-Marazki v. Univ. of Wis. Syst. Bd. of Regents, 1998 WL 23690, 3 (7th Cir. 1998) (citing *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 203 (7th Cir. 1996)**. Under the *McDonnell Douglas* approach, to state a claim under Title IX, Kayla must show the following: "(1) that she was excluded from participation in, denied benefits of, or subjected to discrimination in an educational program; (2) that the exclusion was on the basis of sex; and (3) that defendant receives federal financial assistance." *Adams v. Lewis University,* **1999 WL 162762, 4 (N.D.Ill. 1999) (citations omitted)**.

The Lochs offer no direct evidence of sex discrimination; therefore, the Court's analysis continues under the *McDonnell Douglas* approach. The third factor is established because there is no question that the District receives federal financial assistance. However, assuming, *arguendo,* that all of Kayla's assertions are true and that she was excluded from participation in, denied benefits of, or subjected to discrimination in an educational program, nonetheless, she has not established that these denials were on the basis of sex.

The Lochs's first arguments are irrelevant and immaterial. Whether the EHS principal and the assistant superintendent were deliberately indifferent to the Lochs's requests for accommodations and whether "a lack of training, gross misjudgment, or pure utter ignorance" caused them to fail to recognize Kayla's request for an IEP does not even suggest that these actions were undertaken on the basis of sex.

The Lochs's final argument is equally unavailing. They allege that "alternative programs that are available are afforded to male students at a 4 to 1 advantage over female students."

However, their evidence consists of references to approved alternative education programs offered by the District and not to self-directed enrolment in classes at LCCC to earn credits for graduation at EHS. The Lochs identify the following programs with participation by gender:

Private Day School - IEP students     77% male, 23% female
Collinsville Area Vocational Center 82% male, 18% female
Correspondence Course Program       69% male, 31% female

First, there may be many reasons other than gender bias why these programs predominantly have male students. More importantly, for the current proceeding, Kayla did not seek and was not denied admittance to any of these programs. The Lochs wanted the District to create a new program that would allow Kayla to take classes at LCCC at her own discretion yet gain graduation credits and obtain a diploma from EHS. There is no question of sex discrimination posed because the program the Lochs wanted was not available to female or male students. The Lochs's demands were simply unreasonable. The Lochs have failed to state a claim under Title IX; therefore, the Court will dismiss Count III of Plaintiff's amended complaint.

## IV.  Conclusion

For all of the reasons stated above, the Court **GRANTS** the District's motion for summary judgment (Doc. 161) and **DENIES** the Lochs's Motion for summary judgment (Doc. 163). The Clerk of Court **SHALL ENTER JUDGMENT** in favor of Defendant, Board of Education of Edwardsville Community School District #7, and against Plaintiffs, Thomas H. Loch, Glenna H. Loch and Kayla N. Loch.

**IT IS SO ORDERED.**

**DATED this 15th day of July, 2008**

**s/Michael J. Reagan** 
**MICHAEL J. REAGAN**
**United States District Judge**